FOREST PRODUCTS CHEMICAL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46621. Promulgated January 31, 1933.

*F. E. Hagler, Esq.*, for the petitioner.
*N. Gammon, Esq.*, for the respondent.

**640**

OPINION.

LANSDON: The petitioner's contention that for the year 1927 it was entitled to file a consolidated return for itself and a 100 per cent owned subsidiary is without merit. Affiliation after May 14, 1926, is admitted by the respondent, but the record shows that for that year each of the affiliated corporations filed a separate income tax return. That procedure was an election to file separate returns as provided in section 240 (c) of the Revenue Act of 1926 [1] and article 632 of Regulations 69.[2] Petitioner's sole contention on this issue is that through conversations between one of its employees and a revenue agent it satisfied the requirements of the statute and the regulations. This is not sufficient. The Commissioner was never asked to grant the necessary permission to change to the consolidated basis, nor did he even delegate his discretion or authority to the revenue agent. On this issue the determination of the respondent is affirmed.

[1] For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns at least 95 per centum of the voting stock of the other or others, or (2) if at least 95 per centum of the voting stock of two or more corporations is owned by the same interests. This subdivision shall be applicable to the determination of affiliation for the taxable year 1925.

[2] *Consolidated returns.*—Affiliated corporations as defined in section 240 (d), irrespective of the basis upon which returns were filed prior to 1926 under section 240 (a) of the Revenue Acts of 1924 and 1926, may for 1926 elect to make separate returns or file a consolidated return in which will be reported the consolidated net income of the affiliated group. If return is made upon either of these bases, all subsequent returns must be made upon the same basis except as permission to change may be granted by the Commissioner. In applying for permission to change from one basis to the other there should be submitted a statement in the form of an affidavit executed by a person or persons qualified to sign the returns (see section 239) setting forth completely the reasons for making the request.

*Lucas* v. *St. Louis National Base Ball Club*, 42 Fed. (2d) 984; certiorari denied, 282 U. S. 283; *A. S. Siracusa Sons, Inc.*, 23 B. T. A. 53. Cf. *Gustave Rader Co.*, 19 B. T. A. 12; *L. V. Estes, Inc.*, 22 B. T. A. 806; *M. Morgenthau-Seixas Co.*, 25 B. T. A. 1235.

On the second question it is clear that in the taxable year the petitioner spent the amount of $4,236.82 in an investigation of the Suide method of manufacturing acetic acid. It is equally clear that in subsequent years it erected a plant for the use of that method and that it eventually secured a license from the patentee of such method, permitting its use during the life of the patent. The cost of this investigation, of the plant additions and any other expenses incurred in securing such license and in the installation of machinery and equipment for the production of acetic acid were all capital expenditures which we think are deductible ratably from income during the term of the license. *Gilliam Mfg. Co.*, 1 B. T. A. 967; *Goodell-Pratt Co.*, 3 B. T. A. 30; *Dempster Mill Mfg. Co.* v. *Burnet*, 46 Fed. (2d) 604; *United Profit-Sharing Corp.*, 66 Ct. Cls. 171. We are of the opinion that this amount was properly accounted for on the books of the petitioner as deferred charges and that it is not deductible from income in the taxable year, as is now contended.

Upon the record we are convinced that the bonus credits of $500 and $5,000 made to Albin and Boisen in the taxable year were duly authorized and were corporate obligations at December 31 of such year. The officer authorized to make the contracts with the employees ordered the credits. The total amount received by each employee was reasonable compensation for services rendered in 1927. The fact that the stock certificates were not issued until some time in 1928 is not material, since the petitioner was on the accrual basis. Moreover, the credit made as of December 31, 1927, vested the ownership of the specified amount of common stock in the employees as of that date, regardless of the time at which the certificates, which are no more than evidence of stock ownership, were issued. The uncontradicted evidence indicates that the stock was worth $100 per share when the credits were made. On this issue the determination of the respondent is reversed.

*Decision will be entered under Rule 50.*